```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                      FORT SMITH DIVISION
```

STEVE WOODSON                                              PLAINTIFF

    V.                    No. 2:07-CV-2048

WHIRLPOOL CORPORATION                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

On April 3, 2007, Plaintiff filed a Complaint (Doc. 1) in the Sebastian County Circuit Court against the Defendant alleging breach of contract and promissory estoppel in connection with the termination of his employment. On April 1, 2005, the Plaintiff, a long term employee, was placed on a three month Performance Improvement Plan ("PIP"). The Plaintiff was advised he could be demoted to an hourly position or terminated if he failed to improve his performance in accordance with the PIP. The Plaintiff did not return to work after being placed on the PIP and his employment was eventually terminated. The Plaintiff contends that he was wrongfully terminated as the Defendant's employee policies created an implied contract of employment and that the Defendant breached that contract by failing to follow the steps of progressive discipline outlined in the policies. The matter was removed to this Court on May 11, 2007.

Currently before this Court are Defendant's Motion for

Summary Judgment (Doc. 9), Brief in Support (Doc. 10) and Statement of Facts (Doc. 11), Plaintiff's Response to Motion for Summary Judgment (Doc. 13), Brief in Support (Doc. 14), and Statement of Facts (Doc. 16), and Defendant's Reply to Plaintiff's Response (Doc. 17), and Response to Statement of Facts (Doc. 18). Defendant contends that the Plaintiff was an at-will employee at all times, as reflected by the clear and conspicuous disclaimer found in the employees policies, and that the Plaintiff was not terminated as a result of his placement on the PIP, but because he did not return to work. Therefore, the Defendant argues it is entitled to judgment as a matter of law. For the reasons set forth herein, the Defendant's motion is **GRANTED** and the Plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

**A. Background**

The Plaintiff was hired by Defendant on February 19, 1973, as an hourly employee at its facility in Fort Smith, Arkansas. (Pl. Dep. 7). In 1979, Plaintiff was promoted to Defendant's salaried workforce. (Pl. Dep. 7-8). At the time of his termination, Plaintiff worked as a Steel Coordinator under the supervision of Bill Parish ("Parish") and did not have a written employment agreement. (Pl. Dep. 8). As a Steel Coordinator, Plaintiff was responsible for reviewing the schedule to ensure that there was an adequate supply of raw

steel materials for production and in contacting various suppliers to obtain steel materials as needed. (Pl. Dep. 26-29). Plaintiff was required to issue a written warning, known as a debit, and recommend a supplier be assessed a penalty, known as a Supplier Communication Notice ("SCN"), if a supplier caused production downtime. (Pl. Dep. 28-29). Plaintiff was also responsible for monitoring and maintaining inventory levels of steel materials at the consignment warehouse to ensure an adequate amount of steel was available to fulfill the production schedule. (Pl. Dep. 17, 21, 24). Plaintiff was provided with a spreadsheet each day that listed the inventory of raw steel materials and reflected when inventory was low enough to be considered "hot", i.e., the inventory needed to be replenished immediately to avoid a possible shutdown. (Parish Decl. ¶ 3).

Plaintiff received a "meets expectations" rating on the 2004 evaluation completed in November, 2004. (Pl. Dep. Ex. 14). Defendant contends that Plaintiff's work performance began to decline in 2005. (Parish Decl. ¶¶ 12-21). Defendant alleges Plaintiff failed to adjust the desired inventory levels on several occasions between 2004 and 2005 and on at least one occasion when he was directed to do so in writing. (Parish Decl. ¶ 12). On January 27, 2005, Parish removed certain suppliers from Plaintiff's responsibility and

3

distributed them to other coordinators. (Pl. Dep. 67; Pl. Dep. Ex. 13). The Defendant alleges that the production schedule had to be changed on occasion because of a shortage of steel material that the Plaintiff was responsible for monitoring and maintaining. Defendant contends that the production downtime would not have occurred if the Plaintiff had issued SCNs to suppliers as required. (Parish Decl. ¶ 15).

Parish alleges that he received an increased number of calls from suppliers and Whirlpool advisors regarding their inability to contact the Plaintiff. (Parish Decl. ¶ 13). On January 25, 2005, a Whirlpool supervisor contacted Parish after Plaintiff failed to respond to the supervisor's emails, phone calls, and pages requesting immediate assistance in locating materials. (Parish Decl. ¶ 16). Parish ultimately contacted the supplier regarding the delivery of the materials. In response to Parish contacting the supplier, Plaintiff sent an email to Parish stating that he knows "far better than [Parish, Whirlpool's] day to day needs so [he]'d appreciate [Parish] not interfering." (Pl. Dep. Ex. 11). On or about February 1, 2005, Tim Kern, Director of the Materials and Accounting Departments, ("Kern") and Parish met with Plaintiff. Kern counseled Plaintiff that the email sent to Parish was inappropriate and advised him that Parish was his

supervisor and that he needed to follow Parish's instructions. (Pl. Dep. 77, 181; Parish Decl. ¶ 17). Parish directed Plaintiff to provide Kern a weekly report on inventory in an effort to limit the number of schedule changes. (Pl. Dep. 79). Defendant alleges that Plaintiff failed to provide weekly reports despite this directive. (Parish Decl. ¶ 18). Defendant also contends that Plaintiff failed to follow procedures for taking vacation time and with regard to accepting vendor gifts. (Parish Decl. ¶ 18).

On Friday, April 1, 2005, Parish and Jerry Dean ("Dean") met with Plaintiff regarding Plaintiff's work performance. (Pl. Dep. 90). Dean informed Plaintiff that his performance was tracking "below expectations" and presented him with a PIP to improve performance. (Pl. Dep. 99). The PIP was the fourth step of the progressive discipline plan in place at Whirlpool. (Pl. Dep. 99). The PIP allowed Plaintiff a three month period to improve his performance and stated that he could be demoted to an hourly position or terminated if he failed to do so. (Pl. Dep. Ex. 18). The PIP did not impact Plaintiff's job duties or salary. (Dean Decl. ¶ 5). During this meeting, the Plaintiff stated that he'd "just quit", but Dean told him to think about it over the weekend and scheduled a meeting on Monday, April 4, 2005, to discuss the PIP further. (Pl. Dep. 104). After the meeting, the Plaintiff

left work before the end of the workday and never returned. (Pl. Dep. 108-109).

On Monday, April 4, 2005, Plaintiff sent an e-mail to Parish informing him that he had an appointment with his doctor. (Pl. Dep. 109, 118). Soon thereafter, Plaintiff requested, and was granted, short term disability leave. (Pl. Dep. 118-119). On or about April 29, 2005, Plaintiff applied for Social Security Administration disability benefits. (Pl. Dep. 129). On September 14, 2005, Plaintiff applied for long term disability. (Pl. Dep. 138). Unicare, Whirlpool's third party disability provider, initially denied Plaintiff's long term disability. (Pl. Dep. 140). Whirlpool extended Plaintiff's medical benefits for thirty days while he appealed Unicare's decision. (Pl. Dep. 140). When Unicare denied Plaintiff's appeal for long term disability, Whirlpool benefit coordinators, William Chickering and Tim Blount, assisted Plaintiff in obtaining long term disability benefits. (Pl. Dep. 141). On February 22, 2007, Plaintiff began receiving Social Security disability benefits based on a disability beginning March 28, 2005. (Pl. Dep. Ex. 36).

Defendant's salaried employees have had access to Whirlpool's Human Resources Salaried Policies and Procedures ("employee policies") via the company's intranet website ("the portal") since 1991. (Pl. Dep. 103). In 2005, in order to

view the employee policies, an employee had to go to Whirlpool's Human Resources Policies and Procedures home page. The home page contained hyperlinks to the individual policies and an at-will disclaimer which stated:

> The Whirlpool Corporation has developed a set of Personnel Policies for all Salaried Employees that are used as general information guidelines about the benefits, procedures and practices of the Company in many employment-related areas.  Those policies have been placed on the Company's portal to allow properly authorized employees to directly access the information that is of concern to them.  These statements of policy are not intended to create any implied promise or contract of employment or to modify the "employment-at-will" relationship that exists between the Company and all of its Salaried Employees.
>
> Although the general statements of benefits, practices, and procedures contained in these policies are normally followed at the present time, the Company specifically reserves the right to modify, revise or suspend these guidelines at any time and for any reason; and to do so with or without prior notice of action.  The policies contained herein are for the sole purpose of giving our employee access to our normal guidelines in areas of usual concern.  Employees should always seek the assistance of the Human Resources Department to determine the actual application of any policy outlined herein.
>
> There statements of policy supersede all previous policies, handbooks, manuals or other written statements on these subjects and those prior writings are hereby made null and void.  Only the Chief Executive Officer of the Company has the authority to enter into any agreement contrary to these standards and such limited exceptions must be in writing and signed by him.

Plaintiff admits he visited Whirlpool's Human Resources Policies and Procedures home page in April 2005 to access the employee policies, but denies seeing the at-will disclaimer located on the page.  (Pl. Dep. 165).

**B.   Standard of Review**

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The Court must view all facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574 (1986). "The non-moving party, however, must still 'present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in [their] favor.'" *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1003-4 (8th Cir. 2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010 (8th Cir. 1992)). Summary judgment is appropriate where a plaintiff fails to present evidence sufficient to create a jury question as to an essential element of his claim. *Turner v. Honeywell Fed. Manuf. & Tech.*, 336 F.3d 716, (8th Cir. 2003).

**C. Analysis**

Defendant contends that the Plaintiff was an at-will employee at all times, as reflected by the clear and conspicuous disclaimer found in the employees policies, and that the Plaintiff was not terminated as a result of his

8

placement on the PIP, but because he did not return to work. The Defendant argues it is entitled to judgment as a matter of law.  Additionally, the Defendant argues that the Plaintiff has failed to establish a claim for promissory estoppel. Arkansas is an employment at-will state where both an employer or an employee may terminate an employment relationship at will, but there are certain exceptions to that rule. *Crain Indus., Inc. v. Cass*, 305 Ark. 566, (1991). Under the employment-at-will doctrine, an employee may be discharged for good cause, no cause, or even a morally wrong cause. *Smith v. American Greetings Corp.*, 304 Ark. 596, (1991). Although the employment-at-will doctrine has been modified in some respects, it continues to represent the law of the state. *Kimble v. Pulaski Co. Special Sch. Dist.*, 53 Ark.App. 234, (1996).

The Arkansas Supreme Court has recognized only limited exceptions to the at-will employment doctrine.  These would include: 1) where there is an agreement that the employment is for a specified time, in which case firing may be only for cause; 2) where there is an express provision contained in an employment manual stating that the employee will only be dismissed for cause and such provision is relied on by the employee; 3) where an employee is fired in violation of a well-established public policy of the state; and 4) where a

9

statement contained in an employment handbook amounts to an enforceable promise by the employer. *Coatney v. Enterprise Rent-A-Car Co.* 897 F.Supp. 1205, 1207 (W.D.Ark.,1995).

The Plaintiff contends that the Defendant's employee policies created an implied contract of employment and that the Defendant breached that contract by failing to follow the steps of progressive discipline outlined in the policies which resulted in his termination. Specifically, the Plaintiff alleges that the Defendant skipped steps one through three of the progressive discipline provision. The progressive discipline provision sets out five steps for discipline: step one involves coaching; step two involves counseling; step three involves a warning; step four involves presentation of a PIP; and step five involves demotion or termination. The Defendant denies skipping steps one through three and offers evidence of meetings and emails as proof. Furthermore, the Defendant argues that the at-will disclaimer found on Whirlpool's Human Resources Policies and Procedures home page clearly expresses that the employee policies contained on the portal are not intended to create any implied contract or promise of employment or to modify the at-will employment relationship that exists. The Plaintiff alleges that the disclaimer on the home page was not conspicuous enough to be effective, that he did not see the disclaimer, and that the

10

disclaimer was not communicated to him.

An at-will disclaimer that is clear, conspicuous and communicated to employees may eliminate contractual liability of the employer for promises or contracts implied in an employer's handbook. *Id.* In *Coatney,* the Court held that a policy manual with a disclaimer "buried on the last page" does not constitute an employment contract. *Id.* The disclaimer at issue in our case includes language similar to the language found in the disclaimer in *Coatney.* *Id.* The Defendant's employee policies could not be viewed without first viewing Whirlpool's Human Resources Policies and Procedures home page, which contained an at-will disclaimer. The disclaimer was located in the center of the home page under a statement which read: "before reviewing any policy on this page you must read and agree to the below statement." The language of the disclaimer clearly expressed that the employee policies were not intended to imply any promise or contract of employment or modify the at-will employment relationship that existed. The disclaimer stated that the employer reserved the right to modify, revise or suspend the guidelines at any time with or without giving notice. Additionally, the disclaimer specifically set forth the conditions under which an employment contract would arise. Only the Chief Executive Officer of the Company was authorized to create an employment

11

contract and that contract would have to be in writing and signed by him. The Court can only conclude that the Defendant's at-will disclaimer was clear and conspicuous.

The Plaintiff contends that he did not see the at-will disclaimer and therefore, even if valid, it was not effectively communicated to him. The Plaintiff cites *Crain Industries, Inc. v. Cass,* 305 Ark. 566, (1991), for the proposition that a disclaimer is not effective until it is actually communicated to the employee. In *Crain,* the Court found that the employer added a disclaimer to the handbook without notifying its employees of its inclusion. Therefore, the Court concluded the employer had not effectively communicated the disclaimer to its employees. In our case, the disclaimer was on Whirlpool's Human Resources Policies and Procedures home page at the time the Plaintiff viewed the employee policies. The Plaintiff argues that the Defendant was attempting to unilaterally change a contract by adding the disclaimer. However, this argument fails because there has been no allegation or evidence offered that the disclaimer was added after the employee policies were published on the portal. The Plaintiff began employment as an at-will employee and the disclaimer confirms that relationship. The Defendant cites several cases in which courts have found that a Plaintiff's failure to see a clear and conspicuous disclaimer

12

AO72A
(Rev. 8/82)

is insufficient to defeat summary judgment. *See, e.g., Hofer v. Gap, Inc.,* 05-40170, 2007 U.S. Dist. LEXIS 72701 (D. Mass. Sept. 28, 2007); *Mitchell v. Ga. Dept. Of Cmty. Health,* 281 Ga. App. 174 (Ga. App. 2006).

The Court finds that the Defendant communicated the disclaimer to its employees by displaying it in the center of Whirlpool's Human Resources Policies and Procedures home page. The Defendant created a portal for employees to access its policies which required that every employee visit the home page before viewing any of the specific policies. The home page clearly directed employees to read the statement including the disclaimer before reviewing any of the policies. The Plaintiff's failure to read the disclaimer is not sufficient to overcome its effect. The Court finds that the disclaimer was clear and conspicuous and therefore, the employee policies did not create any promise or contract of employment. The Plaintiff was an at-will employee when he was terminated and his breach of contract claim fails. The Court does not address the Plaintiff's promissory estoppel claim as he abandoned it when he failed to discuss it in his response to the Defendant's motion for summary judgment.

Accordingly, the Defendant's motion for summary judgment (Doc. 9) should be and hereby is **GRANTED,** and the

AO72A
(Rev. 8/82)

Plaintiff's complaint (Doc. 1) is **DISMISSED WITH PREJUDICE** with each party to bear its own costs.

      IT IS SO ORDERED this 18th day of March, 2008.

                              */s/ Robert T. Dawson*
                              Honorable Robert T. Dawson
                              United States District Judge